UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHY SIDI, Adm'trix, et al.,   Case No.: 1:13cv242

      Plaintiffs,   Judge Michael R. Barrett

  v.

CITY OF CINCINNATI, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss the Amended Complaint and Motion to Dismiss the Second Amended Complaint of Defendants City of Cincinnati, Officer Mark McChristian, Officer Timothy Lanter, and Sergeant Matthew Voegler (the "City Defendants").  (Doc. 9; Doc. 23).[1]  Plaintiffs have filed responses in opposition (Doc. 14; Doc. 24) and the City Defendants have filed a reply (Doc. 16).[2]  This matter is now ripe for review.

## I.     BACKGROUND[3]

---

[1] Only Defendant Mark Gerth has not moved to dismiss the claims against him.

[2] Defendants originally filed a motion to dismiss, which will herein be denied moot due to the filing of the First Amended Complaint. (Doc. 3).  Defendants subsequently filed another motion to dismiss. (Doc. 9).  Plaintiffs then filed a Second Amended Complaint, and Defendants renewed their motion to dismiss. (Doc. 23).  As the parties have indicated that the Second Amended Complaint did not substantively change the allegations against the Defendants, and both parties renewed their previous briefings filed in response to the First Amended Complaint, the Court considers the briefings simultaneously.  (*See* Doc. 23; Doc. 24).

[3] In examining the background of the case, the Court considers the facts alleged in Plaintiffs' Second Amended Complaint and the Emergency Operation of Police Vehicles and Pursuit Driving policy attached to Plaintiffs' response in opposition. The Court, however, declines to consider the mobile video recording of the incident attached by the City Defendants to their motion to dismiss.  The City Defendants argue that the Court should consider the video recording as a public record. (Doc. 9, p. 2; Doc. 16, p. 6 n. 1).  Ordinarily "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  There are exceptions to that rule, however.  The Court may consider other materials that are referenced in and integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice. *See Wyser-Pratte Management Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).  The Court may take judicial notice of facts "not subject to reasonable dispute" which are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

1

This case arises from an eight-minute high-speed police chase that started in Over-the-Rhine, proceeded through Mt. Auburn and Clifton, and terminated in downtown Cincinnati. (Doc. 22, ¶¶ 10, 25). The policy governing such police pursuits is City of Cincinnati Regulation Section 12.535 concerning the Emergency Operation of Police Vehicles and Pursuit Driving. (Id., ¶ 13). The policy permits pursuit driving when there is: a) "[o]n-sight pursuit of a known suspected felon"; b) "[o]n-sight pursuit of misdemeanor violations, only if witnessed by the officer or if a warrant is on file"; and c) "[w]hen directed by a supervisor or by Emergency Communications Center (ECC) direction of a supervisor to assist in a police pursuit." (Doc. 14-1, p. 4). The policy indicates that officers will terminate pursuits when: a) the "pursuit [Officer in Charge] or the primary unit determines the level of danger created by the pursuit outweighs the necessity for immediate apprehension"; b) the identity of the suspect has been established, "allowing for apprehension at a later time and there is no longer a need for immediate apprehension"; c) the "[l]ocation of the pursued vehicle is no longer known"; or d) "[t]he pursued misdemeanor violator crosses the Hamilton County line." (Doc. 14-1, p. 6).

The instant police pursuit began on or about 12:44AM on the morning of March 16, 2011 when Defendant McChristian, a police officer for the City of Cincinnati, stopped a vehicle operated by Defendant Gerth on suspicion it was stolen. (Id.) Using lights and sirens, McChristian caused Gerth to stop the vehicle. (Id., ¶ 11, 25). However, shortly after stopping, Gerth accelerated his vehicle away from McChristian. (Id. ¶ 12). McChristian began chasing the

---

Here, the policy attached to Plaintiffs' response in opposition is referenced in and integral to the claims set forth in the Second Amended Complaint. The police mobile video recording, however, is not referenced in the Second Amended Complaint. Nor is it the type of public record that the Court should consider without converting the motion to dismiss into a motion for summary judgment. The substance and the interpretation of the information contained in the video recording are subject to reasonable dispute, and additional witness testimony may be necessary to fully explain the events that occurred during the pursuit. While there just so happens to be a video recording of the events at issue in this case, the ability of Plaintiffs to bring their claims did not rest on the existence of the video recording. As such, the Court does not find it appropriate to consider the mobile video recording in ruling upon the motion to dismiss. *But see, McGee v. City of Cincinnati Police Dep't*, No. 1:06-cv-726, 2007 U.S. Dist. LEXIS 28665, at *7 (S.D. Ohio Apr. 18, 2007) (considering police videotape on motion to dismiss).

vehicle using lights and sirens. (Id.) McChristian was the primary unit in the chase, who is responsible for keeping the suspect's vehicle in sight, advising the supervisor if more than two police units are necessary, and terminating the pursuit if conditions warrant. (Id.; Doc. 14-1, p. 6). Defendant Lanter, another police officer with the City of Cincinnati, acted as the second police chase vehicle and was responsible for immediately notifying ECC there are two police units involved, assuming responsibility for the transmission of all relevant pursuit information to ECC, and providing backup for the primary unit during arrest. (Doc. 22, ¶ 13; Doc. 14-1, p. 6). Defendant Voegler, a sergeant for the City of Cincinnati police, served as the Officer in Charge, who was responsible for directing the pursuit until its termination. (Doc. 22, ¶ 13; Doc. 14-1, p. 5).

The pursuit continued for two minutes until McChristian lost visual contact with the vehicle driven by Gerth. (Doc. 22, ¶ 14). Other vehicles had become involved in apprehending the suspect at this time. (Doc. 22, ¶ 18). Approximately thirty-five seconds later, McChristian and Lanter resumed pursuit of Gerth without authority of the OIC of the pursuit. (Id., ¶ 19). Roadblocks and stop sticks were utilized, but were ineffective. (Id., ¶ 27). During the pursuit, they proceeded down residential and mixed use areas at speeds up to 80 miles per hour. (Id., ¶ 21). McChristian and Lanter did not notify the Emergency Communications Center of the speeds involved in the pursuit. (Id., ¶ 20). At one point on southbound Sycamore Street at Central Parkway, McChristian lost sight of Gerth, but still continued pursuit. (Id., ¶ 28). As Gerth proceeded down Sycamore Street with the police in pursuit, a cab operated by Mohamed Ould Mohamed Sidi that was traveling west on Eighth Street was struck by the Gerth vehicle as the cab entered the intersection at Sycamore Street. (Id., ¶¶ 24, 30). Mohamed Ould Mohamed Sidi died at the scene of the crash, and his blind passenger died sometime thereafter. (Id., ¶ 31).

Following the crash, Gerth was charged with and convicted of several crimes, including two counts of murder, one count of aggravated vehicular assault, one count of failure to comply, two counts of hit and skip, and one count of receiving stolen property. (Id., ¶ 32). The police officers were not prosecuted. (Id., ¶ 33). Defendant City of Cincinnati investigated the police procedures, but found no violations of the pursuit policy. (Id., ¶¶ 32, 34). A Cincinnati Enquirer article reported that between January 2011 and September 2011 procedural rules were violated forty-two percent of the time during police pursuits. (Id., ¶ 36).

## II. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. Qualified Immunity under Section 1983

The City Defendants contend that they are entitled to qualified immunity on Plaintiffs' Section 1983 claims. The Sixth Circuit has established a three-step test for evaluating qualified immunity defenses. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). First, it is necessary to determine whether the plaintiff has shown a violation of a constitutionally protected right. *Id.* Second, the court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.* Third, the court must determine whether the plaintiff "has alleged sufficient facts, and supported the allegations by sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* If the plaintiff fails to meet any of the three elements, qualified immunity must be granted. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

#### 1. Fourth Amendment

The City Defendants argue that Plaintiffs have not alleged a plausible violation of the Fourth Amendment based upon a high-speed police pursuit. The Court agrees.

The Fourth Amendment to the United States Constitution protects the right of people against unreasonable search and seizure. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). The Fourth Amendment is not implicated when police pursue a suspect and the suspect or a third party is accidentally injured. *Id.* Instead, the resulting injuries are analyzed under the Due Process Clause of the Fourteenth Amendment. *Id.*

Given the above standard and considering that Plaintiffs failed to defend their Fourth Amendment claim in their memorandum in opposition, the Court concludes that Plaintiffs have

5

not presented a plausible Fourth Amendment claim based upon the facts alleged. Accordingly, the City Defendants' motion to dismiss on this ground is granted.

### 2. Fourteenth Amendment

The City Defendants also argue that Plaintiffs have failed to allege a plausible violation of the Fourteenth Amendment. The Court agrees.

A Section 1983 claim may be brought against a police officer under the Fourteenth Amendment for injuries or death to innocent third parties caused by a traffic pursuit. *Meals v. City of Memphis*, 493 F.3d 720, 730 (6th Cir. 2007). To succeed on such a claim, a plaintiff must prove that the police officers' conduct "'shocks the conscience.'" *Id.* at 723, 730 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)). "'[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.'" *Id.* (quoting *Lewis*, 523 U.S. at 836). "'[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.'" *Id.* (quoting *Lewis*, 523 U.S. at 854).

Here, both parties rely on *Meals*, 493 F.3d at 730. *Meals* involved an officer who initiated and continued a high-speed pursuit of an automobile that had exceeded the speed limit. *Id.* at 723-24. During the pursuit, the officer did not turn on the lights or siren and did not obtain authority from a supervisor to continue the chase, which both were violations of the police policy on pursuits. *Id.* The fleeing suspect eventually crashed into another car, killing two occupants and leaving one occupant paralyzed. *Id.* On summary judgment, the Sixth Circuit determined that there was no evidence of an intent on the officer's part to harm the fleeing suspect or to worsen his legal plight, and specifically rejected the argument that multiple violations of the

police policy by the officer raised a question of fact from which malice could be inferred. *Id.* at 730-31. *See also Jones v. Byrnes*, 585 F.3d 971, 977-78 (6th Cir. 2009) (rejecting arguments that violations of department policies gave rise to an inference that the officers actually intended to harm the suspects, separate from the legitimate object of arrest, in a manner that shocks the conscience).

While *Meals* was decided on summary judgment rather than a motion to dismiss, the Court finds it instructive and persuasive here. The facts identified by Plaintiffs to support their claim are striking similar to those in *Meals*. Specifically, Plaintiffs support their Fourteenth Amendment claim with allegations that Defendants violated the pursuit policy while engaging in a high-speed pursuit. (Doc. 14, p. 9). They also point to allegations that the pursuit occurred in mixed residential and commercial areas and lasted for eight minutes. (Doc. 14, p. 9). As in *Meals*, none of those facts, or any other facts in the Second Amended Complaint, plausibly suggest any intent by the officers to intentionally cause Gerth's vehicle to crash, to intentionally cause harm to Gerth, or to intentionally cause harm to any innocent bystanders. Rather, the allegations show only that Defendants were trying to apprehend an individual suspected of stealing a vehicle.[4] As the Sixth Circuit has rejected those types of facts as rising to the level of the "shocks the conscience" standard, *Meals*, 493 F.3d at 730-31, the Court cannot reasonably infer that the conduct of any of the Defendants plausibly suggests the type of intent to harm that is necessary sustain a claim based upon a due process violation.

Accordingly, Defendants' motion to dismiss on this ground is granted.

### 3. City Liability

---

[4] Whether the officers acted willfully, wantonly or recklessly in violation of state law is a separate and distinct question. The Supreme Court explained that the "conscience-shocking" standard under federal is "at the end[] of the tort law's spectrum of culpability." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Thus, a finding that "due process is not offended by the police conduct described here is not, of course, to imply anything about its appropriate treatment under state law." *Id.* at 854 n. 14.

Defendants contend that Plaintiffs cannot plausibly establish municipal liability because there is no constitutional violation and the allegations of insufficient discipline do not establish deliberate indifference.

When a Section 1983 claim is made against a municipality, the Court must consider: 1) whether the plaintiffs' harm was caused by a constitutional violation, and 2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). Where "no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003).

As explained above, Plaintiffs have not alleged a plausible constitutional violation under the Fourth or Fourteenth Amendment to satisfy the first inquiry. Thus, there exists no basis for liability against the City of Cincinnati. In light of that conclusion, the Court need not reach the second issue, as the government's "deliberate conduct" cannot be deemed the "moving force" behind a constitutional violation where, as here, no such constitutional violation exists. *See Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).

Accordingly, Defendants' motion to dismiss on this ground is granted.

### B. Tort Immunity Under Ohio Rev. Code Chapter 2744

The City Defendants argue that they are entitled to immunity for the state law claims against them. The Political Subdivision Tort Liability Act, as codified in Ohio Revised Code Chapter 2744, requires a three-tiered analysis to determine whether immunity is applicable. *See Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 697 N.E.2d 610, 614 (Ohio 1998). The first tier

8

sets out a general rule that political actors are not liable for damages. Ohio Rev. Code. § 2744.02(A)(1). In the second tier, the Court must determine whether any of the five exceptions to the general rule of immunity is applicable. Ohio Rev. Code § 2744.02(B). The third tier of the analysis requires consideration as to whether a defense to liability applies to restore immunity. Ohio Rev. Code §§ 2744.02(B)(1)(a)-(c), 2777.03.

### 1. City of Cincinnati

There is no dispute that the City of Cincinnati is presumptively immune from liability for damages, as it was performing a governmental function by providing police services in trying to apprehend the driver of a stolen vehicle, and serving the common good in a way that "promotes or preserves the public peace, health, safety, or welfare." Ohio Rev. Code § 2744.01(C)(1)-(C)(2). Here, the relevant exception to liability is for negligent operation of any motor vehicle by the City employees when the employees were engaged within the scope of their employment and authority. Ohio Rev. Code § 2744.02(B). If that exception applies, then the immunity of the City of Cincinnati still may be restored if "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." Ohio Rev. Code § 2744.02(B)(1)(a).

The City Defendants first contend that the factual allegations fail to show "negligent" operation of a vehicle by the officers. (Doc. 9, p. 6). However, construing the facts in favor of Plaintiffs, the Court finds the allegations sufficient to plausibly suggest negligent operation at this stage of the litigation. Plaintiffs have alleged that Officers McChristian and Lanter operated their vehicles at 80 miles per hour for approximately eight minutes in mixed residential and commercial zones in the middle of the night where late night businesses were located. At this

9

stage, the allegations raise at least a reasonable inference that the speed was well in excess of the posted speed limits in at least some of those areas where it was likely that individuals would be located. Further, Plaintiffs have alleged the operations occurred in violation of several police policies. As a whole, the allegations thus are sufficient to plausibly suggest negligent operation at this time.

Turning to willful and wanton misconduct, Ohio courts have defined the term "willful misconduct" as a "deviation from clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012). "Wanton misconduct" is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* Generally, when evaluating whether a police officer has engaged in willful or wanton misconduct, "a finder of fact must consider the totality of the circumstances." *Robertson v. Dep't of Public Safety*, No. 06AP-1064, 2007 Ohio App. LEXIS 4499, at *11 (Ohio App. Sept. 27, 2007).

Although a close call, the facts in the Second Amended Complaint construed in favor of Plaintiffs make it plausible that the City Defendants acted at least wantonly under the totality of the circumstances. The Court recognizes that officers do not have a duty to refrain from all pursuits. *See Sparks v. Klempner*, No. 11AP-242, 2011 Ohio App. LEXIS 5319 (Ohio App. Dec. 15, 2011). It also recognizes that some facts may show the officers exercised caution during the pursuit by activating their lights and sirens or paying attention to where they were going, and that the vehicle of the fleeing suspect, not of the police officers, was the one involved in the crash. Nevertheless, a finder of fact still plausibly could conclude that the officers' actions viewed as a

whole exhibit the lack of care necessary for at least wanton misconduct. *See Robertson*, 2007 Ohio App. LEXIS 4499, at *11 ("Simply activating one's lights and siren, looking where one is going, or applying one's brakes, meets the literalistic, but not legal, definition of 'any care.'") (quoting *Hunter v. Columbus*, 139 Ohio App. 3d 962, 969, 746 N.E.2d 246 (Ohio App. 2000)).

The facts as alleged are distinguishable at this stage from *Sparks*, 2011 Ohio App. LEXIS 5319, where the appellate court held that the trial court erred by denying the officer summary judgment on the basis of immunity because the officer had displayed caution in following a stolen vehicle that could not have risen to the level of recklessness. 2011 Ohio App. LEXIS 5319, at *13.[5] Although she followed the suspect, she did so only to keep the suspect in sight to radio his location such that she tempered her pursuit to lessen the suspect's motivation to drive recklessly to evade her. *Id.* at *10. She also slowed and stopped at intersections and continued to run her lights and sirens. *Id.* at 11. At the time of the crash, she lagged approximately four city blocks, and twenty seconds, behind the suspect. *Id.* The court reasoned that "police officers do not have a duty to refrain from all pursuit" or to cease and desist once a suspect begins driving erratically. *Id.*

Here, unlike *Sparks*, the issue is presented to the Court on a motion to dismiss. As such, the Court at this time relies on the facts alleged in the Second Amended Complaint. Construing those facts in the light most favorable to Plaintiffs, they plausibly suggest that the police officers pursued the suspect at 80 miles per hour in excess of the posted speed limit without the oversight of the OIC. The pursuit lasted for eight minutes, and traveled through mixed residential and commercial areas where some late night businesses were located, such that the probability of harm to individuals likely increased. The officers allegedly continued to pursue the suspect

---

[5] The Ohio Supreme Court recently has clarified that the terms willful, wanton and reckless are not interchangeable, and that wanton misconduct requires a greater degree of culpability than recklessness. *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012).

11

without authority at such speeds after losing sight of him and after stop sticks failed to terminate the pursuit. The pursuit further continued into the downtown areas where the fleeing suspect eventually crashed into another vehicle. While it is unclear from the alleged facts exactly where the officers were located in relation to the suspect at the time of the crash, the facts as alleged do not show that officers had tempered their pursuit to lessen the suspect's motivation to drive erratically and instead suggest that the officers were pursuing close enough to continue to simulate a flight response by the fleeing suspect. Under the totality of those circumstances, it is plausible that the police officers acted at least wantonly in pursuing the fleeing suspect.

Further, Plaintiffs have alleged violations of traffic laws, including the speed limits, as well as violations of police policies, including but not limited to policies concerning the termination of pursuit, the transmission of relevant information about speeds and locations, and the duty of the OIC to continually monitor and assess the situation. Although "[i]t is well established that the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct," such violations "may be relevant to determining the culpability of a course of conduct." *See Anderson*, 134 Ohio St. 3d at 388-89. At this stage, the alleged violations of traffic laws and policies are relevant to the overall consideration of culpability. It is not clear at the time whether or to what extent some of policies or statutes were violated, and further discovery and information is necessary to make that determination and to determine the officers' knowledge about the likelihood of any such violations resulting in injury.[6]

Accordingly, Defendants' motion to dismiss on this ground is denied.

### 2. Individual Defendants

---

[6] The Court notes, however, that the Second Amended Complaint alleges that the City's investigation did not find violations of the pursuit policy by the officers.

Individual Defendants McChristian, Lanter and Voegler also generally are immune from liability, unless their acts and omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code. 2744.03(A)(6).  Wanton misconduct is defined the same as above in regards to City immunity.  *See Anderson*, 134 Ohio St. 3d at 388.  Reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Id.*

For the same reasons described above, the Court finds Plaintiffs plausibly have alleged wanton or reckless conduct on the part of the Individual Defendants.  As to Voegler in particular, Defendants claim that Plaintiffs have not demonstrated reckless conduct based upon an allegation that he did not continuously monitor and take control of the situation because the "incident logs show no activity by him during the course of the pursuit."  (Doc. 9, p. 13). Defendants argue that the mere fact that Sergeant Voegler did not register activity does not show that he acted recklessly or failed to monitor the pursuit.  (Id.)   However, the absence of activity by Voegler sufficiently calls into question at this stage his role in monitoring and managing the pursuit.  Even assuming he monitored and managed the pursuit, it still is plausible that his actions are reckless given the above-described actions of the officers that plausibly could rise to the level of reckless or wanton misconduct.  Thus, without the benefit of discovery, the Court cannot conclusively determine that Voegler did not act recklessly as the OIC.

Accordingly, Defendants' motion to dismiss on this ground is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the City Defendants' Motion to Dismiss (Doc. 9; Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**.  It is **ORDERED** that:

1. The federal claim against Defendants McChristian, Lanter and Voegler based upon alleged violations of the Fourth Amendment and the Fourteenth Amendment (Count Two) is hereby **DISMISSED**;

2. The federal claims based upon municipal liability against the City of Cincinnati (Counts Two and Five) are hereby **DISMISSED**; and

3. The state law claims against all City Defendants (Counts One, Three, and Four) remain pending.

It is further **ORDERED** that Defendants' original motion to dismiss (Doc. 3) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

              s/Michael R. Barrett
              Michael R. Barrett, Judge
              United States District Court