**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KATHY SIDI, et al.,** | : | **Case No. 13-cv-242** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Judge Michael Barrett** |
| **-v-** | : | |
| | : | |
| **CITY OF CINCINNATI, et al.,** | : | |
| | : | |
| **Defendants.** | : | **MOTION FOR SUMMARY JUDGMENT** |

The City of Cincinnati, Police Officer Mark McChristian, Police Officer Timothy

Lanter, and Sgt. Matthew Vogeler move for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure. The reasons for this motion are set forth in the

attached memorandum.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**

| | |
|---|---|
| **/s/ Mark R. Manning** | **/s/ Donald E. Hardin** |
| Peter J. Stackpole (072103) | Donald E. Hardin (0022095) |
| Mark R. Manning (0088331) | Hardin, Lazarus & Lewis, LLC |
| Assistant City Solicitor | 30 Garfield Place, Suite 915 |
| 801 Plum Street, Room 214 | Cincinnati, Ohio 45202-4322 |
| Cincinnati, Ohio 45202 | (513) 721-7300 |
| Phone: (513) 352-4576 | Fax: (513) 721-7008 |
| Fax: (513) 352-1515 | donhardin@hllmlaw.com |
| Email: mark.manning@cincinnati-oh.gov | *Special counsel for Defendants in their* |
| *individual capacities* | *Trial attorneys for City Defendants* |

**MEMORANDUM IN SUPPORT**

## I.      Procedural Posture

Plaintiffs Meghan E. Kane for the Estate of Mohamed Ould Mohamed Sidi ("Sidi")

and Kathy Sidi sued Mark Gerth and the City defendants for the wrongful death of Sidi.

The case was originally filed in state court but was removed.

The City defendants moved to dismiss. (Doc. 23, 24). The Court granted the

motion as to the constitutional claims under the Fourth and Fourteenth Amendment.

(Doc 27). The Court denied the motion as to state tort claims. (Doc 27, p.10). The Court

did not consider the mobile video recording (MVR) footage on the motion to dismiss.

The Court then offered to hold a summary jury trial. The jury considered footage

from the MVR, Plaintiff's expert reports, and affidavits from the parties. The jury

returned a unanimous verdict in favor of the City defendants.

## II.     Facts

On March 16, 2011 at 12:42 AM, Cincinnati Police Officer Mark McChristian

attempted to stop a car driven by Mark Gerth in Over-the-Rhine.[1] The vehicle was

reported stolen. After Officer McChristian activated his lights and siren, Gerth pulled

over to the curb and appeared to be coming to a stop.[2] Officer Timothy Lanter pulled up

next to Officer McChristian to assist.[3] At that point, Gerth pulled away from the curb and

---

[1] *See* Exhibit A, McChristian MVR at 23:59:40 – 23:59:53 (McChristian MVR filed
manually on June 14, 2013 (Doc. 10)).
[2] *Id.* at 23:59:43 – 23:59:50.
[3] *See* Exhibit B, Lanter MVR at 00:38:59 – 00:39:00 (Lanter MVR filed manually on
June 14, 2013 (Doc. 10)).

fled from the officers.[4] The officers followed Gerth with lights and sirens activated.[5] Sgt. Matthew Vogeler took command of the pursuit as the officer in charge.[6] Sgt. Vogeler notified the Emergency Communications Center that Officers McChristian and Lanter were pursuing Gerth.

For the next eight minutes, Gerth led the officers on a chase through the streets of Cincinnati. Officer Lanter asked for stop sticks[7] to be placed at a city intersection, but Gerth passed through the intersection before they could be placed.[8] Gerth ran three red lights during the pursuit; the officers stopped at the red lights.[9] When Officer McChristian was about three blocks away, Gerth crashed the stolen car into a taxi operated by Sidi.[10] Gerth got out of his car and fled on foot until the officers cornered and arrested him.[11] Sidi and his passenger died as a result of Gerth's actions. Gerth was charged and convicted of murder, aggravated vehicular assault, failure to comply, hit and skip as well as receiving stolen property. (Compl. ¶ 27).

## III.    Law and Argument

The City defendants are entitled to tort immunity under Chapter 2744 of the Ohio Revised Code because (1) the officers were performing a governmental function, and (2) they did not act recklessly. The Political Subdivision Tort Liability Act, codified in

---

[4] *See* McChristian MVR at 23:39:52 – 23:39:55; *See* Lanter MVR at 00:39:00 – 00:39:05.

[5] *Id.*

[6] Exhibit E, Matthew Vogeler Aff. ¶ 8.

[7] Stop sticks are a strip of spikes used by police officers to deflate the tires of a moving vehicle.

[8] *See* Lanter MVR at 00:43:21 – 26; *See* McChristian MVR at 23:45:05 – 23:45:10.

[9] *See* McChristian MVR at 23:42:16 (first red light), 23:45:23 – 23:45:26 (second red light), and 23:45:26 – 23:45:32 (third red light).

[10] *Id.* at 23:45:33 – 23:45:38.

[11] *Id.* at 23:45:50 - 23:46:30.

Ohio Rev. Code Chapter 2744, sets forth a three-tiered analysis to determine if a political subdivision is entitled to tort immunity. *Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 196 (2006) (citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 1998 Ohio 421 (1998)).

The first tier of the analysis sets forth the general rule that immunity is granted for personal injuries or death as long as the political subdivision's act or omission occurred in connection with a governmental function.  *Hortman*, 110 Ohio St.3d at 196-97 (citing Ohio Rev. Code § 2744.02(A)(1)).[12] In the second tier, the court must determine whether any of the five exceptions to the general rule of immunity apply. *Hortman*, 110 Ohio St.3d at 197 (citing Ohio Rev. Code § 2744.02(B)). One such exception removes liability when an employee negligently operates a motor vehicle. Ohio Rev. Code § 2744.02(B)(1). The motor vehicle exception, however, does not apply if the employee was a police officer responding to an emergency call and the operation of the vehicle did not amount to willful or wanton misconduct. Ohio Rev. Code § 2744.02(B)(1)(a). Finally, immunity will be restored in the third tier of the analysis if the municipality can successfully argue that a defense to liability exists. *Hortman*, 110 Ohio St.3d at 197.

In this case, the City defendants are entitled to state tort immunity. First, the officers were engaged in a governmental function; they were investigating a stolen vehicle. Second, chasing a stolen vehicle that fled from a traffic stop was a call to duty to which the officers had a sworn obligation to respond. More than that, no exception to

---

[12]  Ohio Rev. Code § 2744(A)(1) states that " . . . a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision . . . in connection with a governmental or proprietary function."

immunity applies because the officers' actions were not reckless, let alone willful or wanton. For these reasons, the City is entitled to immunity.

With respect to the individual officers, the footage from the MVR demonstrates the officers did not act in bad faith, wantonly or recklessly in the scope of their official duties. Accordingly, Plaintiffs' state tort claims against the Officers should be dismissed.

**A. The City is entitled to tort immunity because the officers were performing a governmental function by attempting to stop a stolen vehicle.**

A political subdivision is entitled to tort immunity when performing governmental functions. Ohio Rev. Code § 2744.02(A)(1). A governmental function is for the common good and "promotes or preserves the public peace, health, safety, or welfare." Ohio Rev. Code § 2744.01(C)(1). The provision of police services and the enforcement of any law are specifically defined as governmental functions. Ohio Rev. Code § 2744.01(C)(2)(a); Ohio Rev. Code § 2744.01(C)(2)(i). *See Maddox v. City of East Cleveland*, 2012 Ohio 9, ¶ 18 (Ohio 8th Dist. Jan. 5, 2012) (holding that "[t]he operation of a police department is a governmental function, see R.C. 2744.01(C)(2)(a), so the city is presumptively immune from suit"); *Brady v. Bucyrus Police Dep't*, 194 Ohio App.3d 574, 588 (Ohio 3d Dist. 2011).

In attempting to apprehend the driver of a suspected stolen vehicle, the City was providing police services. And Gerth was, in fact, charged and convicted of two counts of murder, one count of aggravated vehicular assault, one count of failure to comply, two counts of hit and skip, and one count of receiving stolen property. (Amend. Compl. ¶ 32). Accordingly, the City was performing a governmental function and is entitled to tort immunity unless an exception to immunity applies.

**B. No exception to immunity exists because the officers responded appropriately to an emergency call.**

A political subdivision performing a governmental function can still be liable if an employee negligently drives a car. Ohio Rev. Code § 2744.02(B)(1).[13] But if the employee is a police officer responding to an emergency call, negligence is not enough to remove the general grant of immunity. Rather, the operation of the car must constitute willful or wanton misconduct to trigger the motor vehicle exception. Ohio Rev. Code § 2744.02(B)(1)(a).

In *Sparks v. Klempner*, the Ohio Tenth District Court of Appeals considered facts very similar to the case at bar. *Sparks v. Klempner*, 2011 Ohio 6456, ¶ 30 (Ohio 10th Dist. Dec. 15, 2011). There, an officer on routine patrol spotted a vehicle she suspected was stolen because of a broken window. *Id.* ¶ 2. She lost sight of the car as she ran the

---

[13] The exceptions to the default rule of tort immunity are laid out in Ohio Rev. Code § 2744.02(B):

> Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

> (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

Ohio Rev. Code § 2744.02(B).

license plate through the Law Enforcement Automatic Data System and discovered the vehicle had indeed been reported as stolen. *Id.* But she found the car again and activated her lights and sirens. *Id.* ¶ 3.  The driver failed to stop, however, and she and another officer gave chase. As they pursued the car, they did not attempt to ram it or otherwise cause it to stop, but they did maintain visual contact. *Id.* ¶ 7.  The officers were approximately four blocks away. *Id.* ¶ 9. During the pursuit, officers yielded at red lights. *Id.* ¶ 10. At this point, the suspect lost control and hit another car head-on, causing significant injury to a third party. *Id.* ¶ 11.

The *Sparks* court concluded that the motor vehicle exception did not apply and the municipality was immune. The officers involved were responding to a call to duty because their professional obligations were triggered by on duty observations that required an immediate response. *Id.* ¶ 32. [14] The court also determined that the traffic pursuit was not willful or wanton. *Id.* ¶ 35. The court noted that the definition of wanton was virtually indistinguishable from reckless.[15] *Id.* ¶ 35. And because the court had already determined that the officers did not act recklessly, which the court defined as the perverse disregard of a known risk, the court found that the officers did not act wantonly. *Id.* ¶ 35.

---

[14] The allegations of the Complaint regarding the City's Pursuit Policy have no bearing on determinations of whether there is a call to duty or emergency. *Sparks v. Klempner*, 2011 Ohio 6456, ¶ 32 (Ohio 10th Dist. Dec. 15, 2011) (citing Ohio Rev. Code § 2744.01(A) for definitions of "emergency call" and "call to duty").

[15] The Ohio Supreme Court recently clarified that the terms willful, wanton, and reckless are not interchangeable, and that wanton misconduct requires a greater degree of culpability than recklessness. *See Anderson v. City of Massillon*, Slip Opinion No. 2012-Ohio-5711. Thus, the *Sparks* court found that the city was entitled to immunity even though it incorrectly applied a lower standard of fault.

In reaching this conclusion, the *Sparks* court noted that the officer was not closely following the car at the time of the accident, did not speed excessively, slowed at intersections, and did nothing other than follow the vehicle. *Id.* at 35 (citing *Pylypiv v. Parma*, 8th Dist. 85996, 2005 Ohio 6364, ¶ 23-24); *Jackson v. Poland Twp.*, 7th Dist. No. 96 CA 261, 1999 Ohio 998. Moreover, the officers did not try to run the vehicle off the road, and the court noted that officers had no duty to cease pursuit merely because the suspect was driving erratically. *Sparks*, 2011 Ohio 6456 at ¶ 22. Finally, the court concluded that violation of a police department's vehicle pursuit policy demonstrated at most negligence, but did not amount to the perverse disregard of a known risk to other drivers. *Id.* ¶ 23 (quoting *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St.3d 351, 356 (1994)).

Like *Sparks*, the motor vehicle exception does not apply in this case. The officers were on a call to duty and their conduct was neither willful nor wanton. Here, as in *Sparks*, the officers were investigating whether a vehicle was stolen. (Amend. Compl. ¶ 10; Exhibit C, Mark McChristian Aff. ¶ 6; Exhibit D Timoth Lanter Aff. ¶ 4). The need to investigate criminal activity is a call to duty for a police officer. *Sparks*, 2011 Ohio 6456 at ¶ 32.

Moreover, the indisputable footage from the MVR of the officers indicates the officers' conduct was neither willful nor wanton. The case took place at one in the morning, when it was unlikely there would be significant pedestrian or vehicular traffic. (Exhibit C, Mark McChristian Aff. ¶¶ 9-11; Exhibit D, Timothy Lanter Aff. ¶ 4). The first civilian vehicle was not encountered until approximately a third of the way into the pursuit. (Exhibit C, Mark McChristian Aff. ¶ 21(f); Exhibit D Timoth Lanter Aff. ¶ 16(f)).

The weather was dry, so there was minimal risk of slipping or skidding. (Exhibit C, Mark McChristian Aff. ¶ 21(b); Exhibit D, Timothy Lanter Aff. ¶ 16(b)). Officer McChristian and Officer Lanter utilized lights and sirens during the pursuit. (Exhibit C, Mark McChristian Aff. ¶ 4; Exhibit D, Timothy Lanter Aff. ¶ 8). During the pursuit, civilian traffic yielded. (Exhibit C, Mark McChristian Aff. ¶ 21(e); Exhibit D, Timothy Lanter Aff. ¶ 16(e)). Both officers took no action to threaten Mr. Gerth, other than following him. (Exhibit C, Mark McChristian Aff. ¶ 21(l); Exhibit D, Timothy Lanter Aff. ¶ 16(j)). There were no attempts to ram him. There were no attempts to force him off the road. There were no attempts to shoot out his tires. There were no attempts to box in his vehicle using other police cars. Both officers paused at red lights and stop signs. (Exhibit C, Mark McChristian Aff. ¶ 21(i); Exhibit D, Timothy Lanter Aff. ¶ 16(i)). The officers were following at such a distance that they were three blocks behind him when Gerth caused the accident that killed Mr. Sidi. (Exhibit C, Mark McChristian Aff. ¶ 21(k); Exhibit D, Timothy Lanter Aff. ¶ 17). Finally, there was no violation of the pursuit policy. (Exhibit F, Aaron Jones Aff. ¶ 5).

Even assuming the officers violated the policy, a violation of a pursuit policy is not enough to demonstrate a perverse disregard of risk. *Sparks*, 2011 Ohio 6456 at ¶ 23 (quoting *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St.3d 351, 356 (1994)). Because the officers did not act recklessly, the Defendants are entitled to tort immunity.

### C. The officers are entitled to immunity because they did not act recklessly.

Employees of political subdivisions are entitled to tort immunity unless the employee's acts or omissions were malicious, in bad faith, or wanton or reckless. Ohio

9

Rev. Code § 2744.03(A)(6).[16] Wanton misconduct is the absence of care for the safety

of others and an indifference to consequences. *Higbee Co.* v. *Jackson*, 101 Ohio St. 75

(1920). It implies a failure to exercise any care toward those to whom a duty of care is

owed when the probability that harm will result is great and is known to the actor. *Tighe*

*v. Diamond*, 149 Ohio St. 520, 526 (1948).

> As for the definition of reckless, the court in *Sparks* noted:
>
> A person is reckless when he acts "knowing or having reason to know of
> facts which would lead a reasonable man to realize, not only that his
> conduct creates an unreasonable risk of physical harm to another, but
> also that such risk is substantially greater than that which is necessary to
> make his conduct negligent." *Thompson v. McNeill*, 53 Ohio St.3d 102,
> 104-05 (1990) (quoting RESTATEMENT (SECOND) OF TORTS (1965), Section
> 500). Distilled to its essence, recklessness is a perverse disregard of a
> known risk. *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008 Ohio 2574, ¶
> 73. Such perversity is exhibited when a person is conscious that his
> conduct will, in all probability, result in injury. *Id.* at ¶ 74; *Rankin v.*
> *Cuyahoga Cty. Dep't of Children and Family Servs.*, 118 Ohio St.3d 392,
> 2008 Ohio 2567, ¶ 37.

---

[16] Ohio Rev. Code § 2744.03(A) provides that:

> In a civil action brought against a political subdivision or an employee of a
> political subdivision to recover damages for injury, death, or loss to person
> or property allegedly caused by any act or omission in connection with a
> governmental or proprietary function, the following defenses or
> immunities may be asserted to establish nonliability:
>
> (6) In addition to any immunity or defense referred to in division (A)(7) of
> this section and in circumstances not covered by that division or sections
> 3314.07 and 3746.24 of the Revised Code, the employee is immune from
> liability unless one of the following applies:
>
> (b) The employee's acts or omissions were with malicious purpose, in bad
> faith, or in a wanton or reckless manner;

Ohio Rev. Code § 2744.03(A)(6)(b).

*Sparks*, 2011 Ohio 6456, at ¶ 18. In other words, the employee must perversely disregard a known risk to lose individual immunity. In this case, the facts fail to show that the officers acted with a perverse disregard of the risk to other drivers.

### 1.  Officer Mark McChristian and Officer Timothy Lanter.

The facts do not demonstrate that Officers McChristian or Lanter acted recklessly in the pursuit of Gerth. Officers McChristian and Lanter were not closely following Gerth and they had their lights and sirens activated. Under the reasoning in *Sparks*, even if a violation of the pursuit policy occurred it would not amount to recklessness. The main accusation against Officers McChristian and Lanter is that the speed of the pursuit was excessive. But Officers McChristian and Lanter did nothing to increase Gerth's speed. They did not try to cut him off or ram him. (Exhibit C, Mark McChristian Aff. ¶ 21(l); Exhibit D, Timothy Lanter Aff. ¶ 16(j)).To the contrary, they kept their distance and were about three blocks away when the accident occurred. (Exhibit C, Mark McChristian Aff. ¶ 21(k); Exhibit D, Timothy Lanter Aff. ¶ 17). The alleged high rate of speed and violation of the pursuit policy are not sufficient to demonstrate that Officers McChristian and Lanter acted with a perverse disregard of the safety of other drivers. Accordingly, both Officer McChristian and Lanter are entitled to tort immunity under Ohio Rev. Code § 2744.03(A)(6)(b).

### 2.  Sergeant Matthew Voegler.

The facts do not demonstrate that Sgt. Voegler acted recklessly in managing the pursuit of Gerth. Sergeant Voegler took command of the pursuit fifteen seconds after Mark Gerth refused to stop. (Exhibit E, Matt Voegler Aff. ¶ 8). He monitored the location, direction and speed of the pursuit by radio. (Id. ¶ 10). He requested clarification on the

11

units that were involved, specifically who was the primary unit and who was the secondary unit. (Id. ¶ 12, 15).  Officer Lanter indicated that the speed of the pursuit was about 40 miles a hour to Sargeant Voegler. (Id. ¶ 16). The officers did not sound out of control or panicked over the radio. (Id. ¶ 17(d)). Sergeant Voegler could only rely on those radio updates to determine the status of the pursuit. Based on those updates, there was no reason to believe the chase was out of hand or that there was a heightened risk to the public. Consequently, taking into consideration radio updates, time of day, and weather, there was no reason to terminate the pursuit. Sergeant Voegler did not act recklessly and is entitled to tort immunity under Ohio Rev. Code § 2744.03(A)(6)(b).

## IV.    Conclusion

Based on the foregoing, Officer McChristian, Officer Lanter, Sergeant Vogeler, and the City respectfully request that the amended complaint be dismissed.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)
CITY SOLICITOR**

**/s/ Mark R. Manning**
Peter J. Stackpole (072103)
Mark R. Manning (0088331)
Assistant City Solicitor
801 Plum Street, Room 214
Cincinnati, Ohio 45202
Phone: (513) 352-4576
Fax: (513) 352-1515
Email: mark.manning@cincinnati-oh.gov
*Trial attorneys for City Defendants*

Donald E. Hardin (0022095)
Hardin, Lazarus & Lewis, LLC
30 Garfield Place, Suite 915

12

Cincinnati, Ohio  45202-4322
(513) 721-7300
Fax:  (513) 721-7008
donhardin@hllmlaw.com
*Special counsel for Defendants in their individual capacities*

## CERTIFICATE OF SERVICE

I certify that on August 11, 2015, a true and accurate copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ **Mark R. Manning**
Mark R. Manning (0088331)

13