STATE OF OHIO )
CITY OF CINCINNATI ) ss:
HAMILTON COUNTY )

## Affidavit of Officer Timothy Lanter, Cincinnati Police Department

Now comes Police Officer Timothy Lanter of the Cincinnati Police Department having been duly cautioned and sworn who says the following based upon his personal knowledge:

1) I am currently employed by the Cincinnati Police Department as a patrol officer.

2) I have been a sworn peace officer in the State of Ohio for 8 years.

3) On March 16, 2011, I was assigned to the downtown services unit of the Cincinnati Police Department and working uniformed patrol.

4) On or around 12:42 AM, I responded to 2300 Vine Street for a request from Officer Mark McChristian for additional uniformed support to conduct a traffic stop of a suspected stolen vehicle, a red 2006 Toyota Rav4, Kentucky license plate 891 DYG.

5) I now know that vehicle was operated by Mark Gerth.

6) Officer McChristian activated his emergency lights to stop the vehicle, however Mark Gerth refused to comply and turned down Thill Street.

7) Officer McChristian re-entered his vehicle, activated the siren on his vehicle and turned to follow Mark Gerth east on Thill Street.

8) I turned my uniformed police cruiser to follow Officer McChristian east on Rice Street, activating the emergency lights and sirens on my vehicle.

9) I identified myself over my radio to communications as the secondary police vehicle involved in the pursuit as indicated on or around 00:40:08 on my mobile video recording from my police cruiser.

10) I also notified communications over my radio that Officer McChristian was the primary pursuit unit as indicated on or around 00:40:08 on my mobile video recording from my police cruiser.

{00156285-2}

11) I re-notified communications over my radio that Officer McChristian was the primary pursuit unit and I was the secondary pursuit unit on or around 00:41:37 on my mobile video recording from my police cruiser.

12) During the pursuit of Mark Gerth, Officer McChristian and I paused at all stop signs and red traffic lights, yielded to moving civilian vehicles, and entered intersections only when it was safe.

13) Because myself and Officer McChristian were pausing at all stop signs and red lights, I indicated we were losing sight of Merk Gerth on Euclid Avenue as indicated on or around 00:42:10 on my mobile video recording from my police cruiser.

14) I notified communications of the speed of the pursuit over my radio was about 30 miles a hour, as indicated on or around 00:41:49 on my mobile video recording from my police cruiser.

15) While other police cruisers were along the pursuit route performing other safety functions such as blocking other vehicular traffic, only two units, myself and Officer McChristian, actively pursued Mark Gerth.

16) At no point during the pursuit did I feel that following Mark Gerth created an unreasonable risk to civilian life or property for the following reasons:

    a) The pursuit started just before 1:00 AM on a cold, Wednesday in March so I believed there would be little or no vehicular or pedestrian traffic.

    b) Weather conditions were cold, cloudy and dry.

    c) During the pursuit, I saw no pedestrian traffic.

    d) During the pursuit, I saw limited vehicular traffic.

    e) All civilian vehicles stopped and yielded.

    f) We encountered our first vehicular traffic approximately one third of the way through the pursuit in front of Christ Hospital in Mount Auburn on or around 00:41:08 on my mobile video recording from my police cruiser.

    g) Mark Gerth yielded to a vehicle in the intersection of Auburn Avenue and East McMillian Avenue on or around 00:41:21 on my mobile video recording from my police cruiser.

    h) Until Mark Gerth crashed downtown, there were no near misses with other vehicles.

    i) Both myself and Officer McChristian were not closely following Mark Gerth, both because we were stopping at all stop signs and red traffic lights and not to increase Mark Gerth's recklessness as he fled.

    j) I did not take any aggressive action that would drastically increase the risk to the public, including ramming Mark Gerth with my police cruiser or attempting a pit maneuver.

17) Mark Gerth lost control of the Rav4 when he ran a red light, striking a 2001 silver Chrysler PT Cruiser and subsequently hitting a marked taxi cab, a 2000 Ford Crown Victoria while I was four blocks away at Reading Road and Sycamore Street on or around 00:44:42 on my mobile video recording from my police cruiser.

18) Mohamed Ould Mohamed Sidi and Tonya Hairston, the two occupants of the taxi cab, were killed.

19) A toxicity test conducted on Mark Gerth after the incident indicated he had alcohol, cocaine, and marijuana in his system.

20) Mark Gerth was charged with two counts of murder, four counts of aggravated vehicular homicide, aggravated vehicular assault, vehicular assault, receiving stolen property, failing to comply with a signal of a police officer, and two counts of failing to stop after an accident.

21) I provided testimony during the jury trial in support of the prosecution that resulted in a conviction and sentence of 45 and a half years in prison for Mark Gerth.

FURTHER AFFIANT SAYETH NAUGHT.

{00156285-2}

_____
Police Officer Timothy Lanter

Sworn to and Subscribed in my presence this __2d__ day of __January__ 2015.


Mark Robert Patrick Manning, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.

_____
Notary Public

{00156285-2}