STATE OF OHIO        )
CITY OF CINCINNATI    )   ss:
HAMILTON COUNTY    )

## Affidavit of Lieutenant Aaron Jones, Cincinnati Police Department

Now comes Lieutenant Aaron Jones of the Cincinnati Police Department having been duly cautioned and sworn who says the following based upon his personal knowledge:

1)      I am currently employed by the Cincinnati Police Department and was the commander of the Professional Standards Section, formerly known as the Internal Investigations Section.

2)      I have been a sworn peace officer in the State of Ohio for 16 years.

3)      I reviewed the conduct of Police Officer Mark McChristian, Police Officer Timothy Lanter, and Sergeant Matthew Vogeler during the vehicle pursuit of Mark Gerth on March 16, 2011.

4)      I have reviewed the alleged violations of Cincinnati Police Department Policy 12.535 contained in Stephen Ashton's report.

5)      I found no violations of Cincinnati Police Department Policy 12.535, *Emergency Operation of Police Vehicles and Pursuit Driving*.

6)      Officer McChristian Officer Lanter, and Sergeant Vogeler complied with Cincinnati Police Department Policy 12.535.

7)      Officer McChristian and Officer Lanter identified themselves multiple times as the primary and secondary units, as evidenced by the mobile video recording from their police cruisers, including 23:40:46 and 23:42:33 on Officer McChristian's video recording and 00:40:08 and 00:41:37 on Officer Lanter's video recording.

8)      While other police cruisers were along the pursuit route performing other safety functions such as blocking other vehicular traffic, only two units, Officer McChristian and Officer Lanter, actively pursued Mark Gerth.

{00156288-3}

9)      Officer McChristian and Officer Lanter paused at all stop signs and red traffic lights, yielded to moving civilian vehicles, and entered intersections only when it was safe in conformity with their training and Cincinnati Police Department Policy 12.535, as evidenced by the mobile video recording from their police cruisers.

10)      Officer McChristian and Officer Lanter notified Sergeant Vogeler of their speed on multiple occasions, as evidenced by the mobile video recording from their police cruisers, including at 23:43:14 on Officer McChristian's video recording and 00:41:49 on Officer Lanter's video recording.

11)      Officer McChristian momentarily lost sight of Mark Gerth but reacquired him when Mark Gerth turned back into Officer McChristian's path on Eden Avenue, as indicated on or around 23:43:14 on the mobile video recording from his police cruiser.

12)      Sergeant Vogeler appropriately monitored the pursuit and asked for updates on location, speed and progress, as evidenced at 23:40:46 of Officer McChristian's video recording and 00:41:49 of Officer Lanter's video recording.

13)      The pursuit of Mark Gerth was not an unreasonable risk to civilian life or property for the following reasons:

    a. The pursuit started just before 1:00 AM on a cold, Wednesday in March, lessening the possibility of vehicular traffic or pedestrian traffic.

    b. Weather conditions were cold, cloudy and dry.

    c. During the pursuit, no pedestrians were visible.

    d. During the pursuit, there was limited vehicular traffic.

    e. All civilian vehicles stopped and yielded.

    f. The report compiled by Stephen Ashton indicates Mark Gerth complied with approximately 14 of 22 traffic control signals during the pursuit (page 10 of his report, last paragraph).

{00156288-3}

g. The first civilian vehicle was not encountered until approximately one third of the way through the pursuit in front of Christ Hospital in Mount Auburn.

h. Until Mark Gerth crashed downtown, there were no near misses with other vehicles.

i. Neither Officer McChristian nor Officer Lanter drove their police cruisers in a manner that increased the risk for civilian life or property.

j. Neither Officer McChristian nor Officer Lanter closely followed Mark Gerth, because they paused, yielded to moving civilian vehicles at all stop signs and red traffic lights, and entered intersections only when it was safe.

k. Neither Officer McChristian nor Officer Lanter took any aggressive action that would drastically increase the risk to the public, including ramming Mark Gerth with a police cruiser or attempting a pit maneuver.

l. With Officer McChristian and Lanter pausing at every red light and stop sign, the officers could not have averaged between 61.76 and 81.61 miles an hour throughout the pursuit as stated in the expert report at page 17.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Lieutenant Aaron Jones

Sworn to and Subscribed in my presence this ___2ʳᵈ___ day of ___January___ 2015.



Mark Robert Patrick Manning, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.

_____
Notary Public

{00156288-3}