# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| KATHY SIDI, et al., | : | Case No. 13-cv-242 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Michael Barrett |
| -v- | : | |
| | : | **REPLY IN SUPPORT OF** |
| CITY OF CINCINNATI, et al., | : | **DEFENDANTS' MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| Defendants. | : | |

Plaintiff relies on three arguments against Defendants' Motion for Summary Judgment: (1) there are questions of fact; (2) Plaintiff's expert report creates questions of fact for trial; and (3) the case law relied on by Defendants is no longer good law. But there are no genuine issues of material fact and the Defendants did not act recklessly. Accordingly, summary judgment should be granted and the case dismissed.

**A. Plaintiff has not presented any questions of material fact that the Defendants perversely disregarded a known risk.**

None of the factual discrepancies raised by Plaintiff, even if true, are material to the issue of whether the officers acted recklessly.

In opposition, the Plaintiff points out a number of alleged discrepancies. (Doc. 36 at 4). The discrepancies are: (1) that the officers pause instead of stop, (2) that Officer Mark McChristian was two blocks behind Mark Gerth at the time of the accidents instead of three, and (3) that Officer McChristian's mobile video recorder was tracking time an hour behind. (Doc. 36 at 4-5). Notably, Plaintiff does not explain how these discrepancies are material to the matter or explain their significance. None of these

1

discrepancies are material because they do not show that the officers perversely disregarded a known risk, i.e. acted recklessly.

### 1. Officers paused at all traffic control devices.

Plaintiff indicates that the officers did not stop, but rather paused at all the traffic control devices. Whether the officers paused or came to a complete stop is not a material difference. Whether the officers paused or stopped, they did not act with reckless, willful or wanton disregard for the safety of the public. Recklessness is defined as a perverse disregard for a known risk. *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008 Ohio 2574, ¶ 73 (Ohio 2008). In this case, pausing at intersections with stop lights or stop signs is not perversely disregarding a risk. The officers determined if there was other vehicular or pedestrian traffic before entering the intersection. By doing so, the officers showed due regard for the safety of those who were not involved in the pursuit. Pausing at traffic control devices during a call to duty pursuit does not exhibit recklessness.

### 2. Officer Mark McChristian's distance behind Mark Gerth at the time of the accident.

Plaintiff indicates that Officer Mark McChristian was only two blocks behind Mark Gerth at the time of the accident, not three blocks. (Doc. 36 at 5). The accident occurred at Sycamore Street and Eighth Street. At that time, Officer McChristian was in the middle of the intersection at Sycamore Street and Central Parkway. Officer McChristian crossed Court Street and then Ninth Street before arriving at the scene of the accident. At that distance, Officer McChristian was not closely following Mark Gerth or taking any action to increase Mark Gerth's erratic driving. His actions did not demonstrate a perverse disregard of a known risk.

### 3. Mobile Video Recorder.

Finally, Plaintiff points out that the time stamp on Officer Mark McChristian's mobile video recorder in his cruiser is an hour behind the time stamp on Officer Lanter's mobile video recorder as well as the affidavits submitted to the Court. (Doc. 36 at 5). However, Plaintiff's own expert indicates that the pursuit began precisely when the officers state it began in their affidavits: 12:42 AM. (Doc. 36-1 at 18; Doc. 33-1, ¶ 4; Doc. 33-2, ¶ 4). Consequently, there is not even a dispute of fact, much less a material dispute. The parties agree that the incident began at 12:42 AM.[1] Once again, there is no argument how the incident beginning at 12:42 AM or 11:42 PM is material to the case or how the difference in time indicates the officers acted recklessly, willfully, or wantonly.

### B. Plaintiff's Expert Opinion.

In this matter, Plaintiff relies on the Affidavit of Steve Ashton for four propositions, including that the pursuit was not in accordance with departmental policy, the officers and supervisor failed to terminate the pursuit, that the risk of the pursuit to the public and officers was too great to continue, and there was a failure to notify the officer in charge of speeds involved. Boiled down, Plaintiff relies on two facts to argue that the Defendants are not entitled to tort immunity under Chapter 2744 of the Ohio Revised Code: failing to state the speed of the pursuit over the radio and the excessive speed in general.

---

[1] Moreover, the discrepancy in the time stamp for Officer McChristian's cruise camera is exactly one hour. Daylight savings time in 2011 was on March 13, three days before this incident. Simply put, Officer McChristian's cruiser camera had not been reset yet to account for the time change.

**1. Officers stated the speed of the pursuit over the radio.**

First, Plaintiff's expert contradicts himself by stating the officers' speed was not called out over the radio. In his own report and affidavit, the expert notes that the officer stated his speed. However, the expert was not able to understand it on the recording. (Doc. 36-1 at 21 (noting "00:41:48 [on Officer Lanter's mobile video recording] - he was asked by communication center his speed. Unable to understand"). Officer Lanter indicates in his affidavit that he stated his speed. (Doc 33-2 ¶ 14). Even in a light most favorable to the Plaintiff, the officers did notify their supervisor of the speed of the pursuit.

More than that, simply failing to announce over the radio what his speed was would not amount to recklessness. Generally, a violation of policy does not rise to the level of reckless conduct unless a plaintiff can establish that the violator acted with a perverse disregard of the risk. *O'Toole,* 2008 Ohio 2574, ¶92. Without evidence of knowledge that policy violations "will in all probability result in injury," evidence that policies have been violated demonstrates negligence at best." *O'Toole,* 2008 Ohio 2574, ¶ 92 (citation omitted) (quoting *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994-Ohio-368). Similarly in *Sparks v. Klempner*, the court concluded that the officer's violation of a pursuit policy did not rise to recklessness, only negligence. *Sparks v. Klempner*, 2011 Ohio 6456, ¶ 23 (Ohio 10th Dist. Dec. 15, 2011).

Here, calling out speed allows supervisors to monitor the pursuit to ensure it does not reach an excessive speed. But the video demonstrates that the officers were not traveling at an unreasonable speed. They operated the vehicles with lights, sirens and they exercised due regard at traffic control devices.

## 2. The officers' speed during the pursuit was not reckless.

The fact that danger arises when a police officer pursues a fleeing driver is insufficient to present a genuine issue of material fact concerning whether the officer acted recklessly. *Elsass v. Crockett*, 9th Dist. No. 22282, 2005 Ohio 2142, ¶29 (Ohio 9th Dist. May 4, 2005); *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002 Ohio 222, ¶40, 772 N.E.2d 129 (Ohio 2d Dist. Jan. 16, 2002). Otherwise, officers would be imposed with a duty to refrain from ever pursuing criminal suspects. Courts have repeatedly refused to establish such a limitation. *Sutterlin v. Barnard*, 2d Dist. No. 13201, 1992 Ohio App. LEXIS 5170 (Ohio 2d Dist. Oct. 6, 1992); *Rahn v. Whitehall*, 62 Ohio App.3d 62, 66, 574 N.E.2d 567 (Ohio 10th Dist. 1989). *See also Lewis v. Bland*, 75 Ohio App.3d 453, 456, 599 N.E.2d 814 (Ohio Ninth Dist. 1991) ("The duty of police officers is to enforce the law and to make arrests in proper cases, not to allow one being pursued to escape because of the fear that the flight may take a course that is dangerous to the public at large."). Moreover, the officer's pursuit does not become reckless merely because the suspect drives erratically. *See Sparks*, 2011 Ohio 6456, ¶ 22 citing *Scott v. Harris*, 550 U.S. 372, 385, 127 S.Ct. 1769, 1779, 167 L. Ed. 2d 686 (2007) ("[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.").

Aside from allegedly failing to call out the speed of the pursuit over the radio, the speed of the pursuit itself is the only fact presented by Plaintiff's expert to argue that the

officer's conduct was reckless, willful or wanton. As a preliminary matter, the expert report distorts the speed of the vehicles. Plaintiff notes that the "vehicle being operated by the Christian [sic] and Lanter . . . ranged from between 61 and 81 mph during this pursuit with an average speed of 72 mph." (Doc. 36 at 6; Doc. 36-1 at 30). However, his average speed ignores the officers' slowing down and pausing at traffic control devices. Thus, his calculations assume that the officers drove the entire route between sixty and eighty miles an hour. This is clearly refuted by the mobile video recording from the officers' cruiser cameras. The footage shows the officers pausing at stop signs and red lights, as well as slowing at corners or in areas with other traffic.

There is no evidence that the officers matched Mark Gerth's speed. Plaintiff notes that seventy eight miles an hour was the speed when the vehicles crossed Central Parkway, seconds before the accident. (Doc. 36 at 6). However, those speeds were not sustained throughout the pursuit. Nor is there any evidence of speed from the Plaintiff (other than the expert's conclusory and inaccurate statements of the average speed) from the time before Mark Gerth crossed Central Parkway. *See* Doc. 36-1 at 17 (reviewing witness statements). The Defendants have presented unrebutted affidavits by from the officers and the mobile video recording from cruiser cameras. In fact, the mobile video recording shows officers slowing at stop lights near Central Parkway. Even in the Plaintiff's expert's report, it does not note the speed of the officers other than to say that they were going slow enough during most of the pursuit to lose sight of Mark Gerth. (*See* Doc. 36-1 at 18 (noting "Officer McChristian had a difficult time keeping up with the suspect vehicle" and Officer Lanter stating he "was too far behind suspect vehicle to witness crash")). Nothing during the pursuit indicated that the officers

perversely disregarded a known risk to the public, the other officers, or even Mark Gerth. Seconds before Mark Gerth lost control of his vehicle his speed increased. At that point, nothing the officers could have done (including breaking off the pursuit) would have changed Mark Gerth's course. The deaths in this case are tragic, but they were not caused by a reckless pursuit. To the contrary, the evidence demonstrates that the officers acted reasonably.

### C. The Defendants are entitled to tort immunity under Chapter 2744 of the Ohio Revised Code because their conduct was not reckless, willful, or wanton.

The Defendants are entitled to tort immunity unless they acted recklessly. *See* Ohio Rev. Code 2744.03(A)(6). For the City to be liable, the plaintiff must prove that the officers' conduct was wanton or willful. *See* Ohio Rev. Code 2744.02(B). In this case, the Defendants are entitled to immunity because the officers acted reasonably.

In the motion for summary judgment, the Defendants illustrated a very similar case where the appellate court held that the officers' conduct was not reckless: *Sparks v. Klempner*. *Sparks*, 2011 Ohio 6456, ¶ 30. In that case and the case before the court, the officers pursued a suspect but did so while mindful of the public, just keeping the suspect in sight. *Id*. ¶ 21. Plaintiff attempts to distinguish *Sparks* by arguing that the court applied the wrong standard. Moreover, the plaintiff argues that this Court rejected *Sparks* at the motion to dismiss stage. Neither argument is correct.

The court in *Sparks* did, in fact, correctly define recklessness. In *Sparks*, the court defined recklessness as a perverse disregard of a risk. *Sparks*, 2011 Ohio 6456, ¶ 18 citing *O'Toole*, 2008 Ohio 2574, ¶ 73. This continues to be the definition of recklessness. *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012 Ohio 5711, 983

N.E.2d 266, ¶ 38 (Ohio 2012) citing *O'Toole*, 2008 Ohio 2574, ¶ 73. The court in *Sparks* concluded that the officer did not act recklessly. *Sparks*, 2011 Ohio 6456, ¶ 23 (holding "no reasonable juror could find that [the officer's] actions during the pursuit displayed a perverse disregard of the risk"). The court went to analyze whether the municipality acted wantonly (and therefore tort immunity would not apply). The court stated that reckless and wanton behavior were synonymous, now an incorrect statement of law. *See Anderson*, 134 Ohio St. 3d at 388. But the court applied the definition of recklessness to wanton behavior, in effect lowering the bar for defeating municipal tort immunity. *Id*. ¶ 35. Even though it applied a less stringent standard, the court still concluded the municipality could not be liable because if the officer did not act recklessly (as the court already concluded), the officer's behavior could not be wanton, as a matter of law. *Id*.

Moreover, this Court rejected *Sparks* on the defendants' motion to dismiss not because it was bad law, but because *Sparks* was decided on summary judgment. *Sidi v. City of Cincinnati*, 2014 U.S. Dist. LEXIS 41113, *20 (S.D. Ohio Mar. 27, 2014) (noting "[h]ere, unlike *Sparks*, the issue is presented to the Court on a motion to dismiss. As such, the Court at this time relies on the facts alleged in the Second Amended Complaint"). This Court explicitly refused to consider the mobile video recordings in support of the Defendant's motion. *Id*. at 3-4 n.3. Now it can. Accordingly *Sparks* is applicable and this Honorable Court should dismiss the amended complaint.

## **CONCLUSION**

Based on the foregoing, Officer McChristian, Officer Lanter, Sergeant Vogeler, and the City of Cincinnati respectfully request that the amended complaint be dismissed.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**

**/s/ Mark R. Manning**
Peter J. Stackpole (072103)
Mark R. Manning (0088331)
Assistant City Solicitor
801 Plum Street, Room 214
Cincinnati, Ohio 45202
Phone: (513) 352-4576
Fax: (513) 352-1515
Email: mark.manning@cincinnati-oh.gov
*Trial attorneys for City Defendants*

Donald E. Hardin (0022095)
Hardin, Lazarus & Lewis, LLC
30 Garfield Place, Suite 915
Cincinnati, Ohio 45202-4322
(513) 721-7300
Fax: (513) 721-7008
donhardin@hllmlaw.com
*Special counsel for Defendants in their individual capacities*

## CERTIFICATE OF SERVICE

I certify that on September 28, 2015, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**/s/ Mark R. Manning**
Mark R. Manning (0088331)